# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Terrance J. Friend, | Case No. 18-cv-3239 (DWF/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Emily Johnson Piper, et al., | |
| Defendants. | |

This matter is before the Court upon Plaintiff's Motion for a Temporary Restraining Order (ECF No. 3); Defendants' Motion to Dismiss (ECF No. 25); and Plaintiff's Motion to Amend Complaint for Violation of Civil Rights Under 42 U.S.C. 1983 (ECF No. 42). This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that Plaintiff's Motion for a Temporary Restraining Order be denied, Defendants' Motion to Dismiss be granted, and Plaintiff's Motion to Amend be granted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Allegations and Relief Sought in Plaintiff's Complaint

In his initial Complaint for Violation of Civil Rights under 42 U.S.C. § 1983, Plaintiff Terrance J. Friend ("Plaintiff" or "Friend") brought suit against Defendants Emily Johnson Piper, Minnesota Commissioner, Minnesota Department of Human Services ("DHS"); Charles Johnson, DHS Deputy Commissioner; Anne Barry, DHS Deputy Commissioner; Nancy Johnston, Chairman/CEO of the Minnesota Sex Offender

Program ("MSOP"); Kevin Moser, MSOP Director, Moose Lake; Krista Gilpin, Nursing

Supervisor for the MSOP; Nicole Boder, Administrative Supervisor, MSOP; Dr. John

Barry, M.D. at MSOP; Keri Ovsak, Licensed Nurse Practitioner at MSOP; and Lucinda

Jesson, former DHS Commissioner. (ECF No. 1 at 1-4.) Friend has sued these

individuals in their official and individual capacities. (*Id.* at 1.)

Friend alleges in his statement of his claim, in its entirety, as follows:

Although Plaintiff has been civilly committed to the Minnesota Sexual Psychopathic Personality Treatment Center, Defendants informed the social security office that this seventy-seven year old is housed in a detention center on prison grounds. Therefore, Plaintiff is recognized as a state detainee by the social security office, whose representative therefore says Plaintiff does not qualify for social security and, as such, cannot receive Medicare coverage, leaving Plaintiff with no medical cost protections.

Defendants not only deny Plaintiff medical care, they punish him for refusing to purchase Minnesota's MnSure medical insurance by confiscating his heart and lung medications, knowing this poses a substantial risk of serious harm that could cause death.

Under the "Respondeat Superior" Doctrine, significant links in the DHS/MSOP chain-of command bear responsibility for the actions of those under their authority, as well as for their own personal actions because of their neglect in not properly educating/superintending the discharge of each subordinates' duties and, they are all aware or should have been aware of the serious consequences of their actions.

MSOP is a counseling program that does not qualify as a treatment facility, which is statutorily defined in Minn. Stat. 253B.02, subd. 18a (1999-2000) as "*a hospital, community mental health center, or other treatment provider qualified to provide care and treatment for mentally ill.*"

Defendants show guilt of their devious actions by requesting and receiving *departmental variances* to illegally alter existing rules, policies, statutes and supreme court precedents. This is done with malicious intent to remove Plaintiff's rights and protections as a "patient" in a coercive move to cause Plaintiff to suffer all punishments, and liberty deprivations reserved for prisoners, to wit, no social security benefits and no Medicare medical coverage.

Because of the concern for cost of transportation and medical care without insurance coverage, Plaintiff can only expect imminent death due to his poor health.

Plaintiff is only one of many MSOP clients that have been denied needed treatment, many of whom have died needlessly. There is a definite pattern showing the effects of Defendants' lack of concern for and indifference to MSOP clients' medical needs.

(*Id.* at 5-7.) While Friend did not specifically set forth in his Statement of the Claim what legal rights are at issue, he did as part of setting forth his basis for federal question jurisdiction state that the following constitutional or statutory rights are at issue: "Constitution Amendment XIV Substantive/Procedural Due Process; Equal Rights; Article III Separation of Powers violations." (*Id.* at 4.)

Friend seeks declaratory, injunctive, punitive, and compensatory relief. (*Id.* at 7-8.) As part of this relief, Friend seeks a court order demanding that Defendants restore his patient status "with all its invaluable protections and rights so Friend can rightfully apply for and rightfully receive social security retirement benefits and automatic Medicare coverage"; and a court order demanding that Defendants "immediately provide proper and necessary medical care for Plaintiff." (*Id.* at 8.)

**B.     Defendants' Motion to Dismiss and Plaintiff's Motion to Amend**

Defendants moved to dismiss Friend's claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. (ECF Nos. 25, 27.)

Friend opposes this motion and subsequently filed a motion to amend. (ECF No. 42.) The only amendment of the Complaint requested by Friend is to change his request

for a jury trial to a bench trial.  (*Id.*)  Defendants do not oppose the Motion to Amend.  (ECF No. 43.)

## II.    MOTION TO AMEND

As stated previously, Friend's Complaint demanded a jury trial.  (ECF No. 1 at 1.)  Friend brings the present motion to amend his Complaint to waive his right to a jury trial on the basis that he has not been able to secure legal counsel, and therefore felt more comfortable having his claims ultimately decided by the Court, as opposed to a jury.  (ECF No. 42.)

The Eighth Circuit instructs that courts should consider motions to amend the pleadings prior to ruling on any pending motions to dismiss.  *See Pure Country Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 955 (8th Cir. 2002); *see also Hazley v. Roy*, No. 16-cv-3935 (SRN/TNL), 2018 WL 1399309, *5 (D. Minn. March 20, 2018) ("Eighth Circuit precedent instructs that courts should not decide a party's motion to dismiss without also considering the opposing party's pending motion to amend the pleadings.") (citations omitted).  As such, the Court will first consider Friend's Motion to Amend.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  A court has the discretion to determine whether to grant leave to amend.  *See, e.g.*, *Niagara of Wis. Paper Corp. v. Paper Indus. Union Mgmt. Pension Fund*, 800 F.2d 742, 749 (8th Cir. 1986) (citation omitted).  Given Friend's desire to waive his right to a jury trial and Defendants' agreement to this proposed amendment, the Court finds that the Motion to Amend should

be granted.  Other than the fact that Friend waived his right to a jury trial, the remainder of the Complaint is incorporated into the Amended Complaint.

### III.    <u>MOTION TO DISMISS</u>

Defendants request that if leave to amend is granted, that their previously filed Motion to Dismiss (ECF No. 25) and accompanying documents be treated as a response to the Amended Complaint.  (ECF No. 43.)  Friend did not oppose this request.

### A.    **Legal Standard**

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaints must be taken as true.  *See Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Federal Rule of Civil Procedure 8 and meet the principles articulated by the United States Supreme Court in *Iqbal* and *Twombly*.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of

5

the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Following *Twombly* and consistent with *Iqbal*, the Eighth Circuit explained:

> While a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. A district court, therefore, is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint.

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (cleaned up). *Pro se* complaints are construed liberally, but they still must allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citations omitted).

6

If matters outside the pleadings "are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). While matters "outside the pleadings" may not be considered in deciding a Rule 12 motion to dismiss, documents "necessarily embraced by the complaint are not matters outside the pleading." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Enervations, Inc. v. Minn. Min. & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)). Thus, while courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned, without converting the motion into one for summary judgment. *Id.*; *see also Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to move to dismiss a pleading for lack of subject matter jurisdiction challenging the sufficiency of the pleading on its face or the factual truthfulness of its allegations. *See Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914-15 (8th Cir. 2015). When a moving party raises a facial challenge based on a pleading, "'the court merely needs to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction.' Accordingly, 'the court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'"

*Id.* at 914 (cleaned up) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)).

**B.    Claims Against Defendants in their Personal (Individual) Capacity**

As set forth in the caption of his Complaint, Friend has sued Defendants in their personal and official capacities.  Defendants argue that Friend failed to plead sufficient facts showing that each individual Defendant was personally involved in an alleged unconstitutional act, and that liability based on the doctrine of respondeat superior is inapplicable to actions brought under § 1983.  (ECF No. 27 at 4-5.)  Friend does not address this argument.

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  "Government officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) (citations omitted).  The doctrine of vicarious liability is inapplicable in § 1983 suits. *See Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.  To establish personal liability of the supervisory defendants, [the plaintiff] must allege **specific facts** of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (emphasis added) (citations and marks omitted); *Jackson v. Nixon,* 747 F.3d 537, 545 (8th Cir. 2014) (holding that a plaintiff "must plead facts that plausibly

show direct involvement . . . in the formation, implementation, or enforcement of that policy").

Friend raises three theories in his Amended Complaint as to why Defendants should be held personally liable for the events at issue.  First, Friend generally asserts that Defendants informed the Social Security office that he is detained in prison thereby making him ineligible for Medicare and Defendants confiscated his medications to make him purchase MNsure medical insurance.  (ECF No. 1 at 5-6.)  Second, Friend alleges that Defendants should be liable under the doctrine of respondent superior "because of their neglect in not properly educating/superintending the discharge of each subordinates' duties and, they are all aware or should have been aware of the serious consequences of their actions."  (*Id.* at 6.)  Third, Friend asserts that Defendants "show guilt of their devious actions by requesting and receiving departmental variances to illegally alter existing rules, policies, statutes and supreme court precedents."  (*Id.*)

Friend makes only the most general and threadbare of allegations.  Friend fails to state any facts describing how Defendants were individually involved in or directly participated in any of the allegedly unconstitutional acts pleaded in his Complaint.  With respect to Defendants' alleged supervisory authority, as set forth above, "[r]espondeat superior or vicarious liability will not attach under § 1983."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  "While the doctrine of respondeat superior does not apply to § 1983 cases, a supervisor may still be liable under § 1983 if either his direct action or his 'failure to properly supervise and train the offending employee' caused the constitutional violation at issue."  *Jackson*, 747 F.3d at 543 (quoting *Tlamka v. Serrell*, 244 F.3d 628,

635 (8th Cir. 2001)).  Direct action, as set forth above, in this context can include a violation arising out of an unconstitutional policy or custom.  *See A.H. v. St. Louis Cty., Missouri*, 891 F.3d 721, 727-28 (8th Cir. 2018).

Here, Friend's Amended Complaint only generally avers that unspecified Defendants failed to supervise or train unspecified subordinates ("educating/superintending") and that they sought unspecified variances to unspecified rules or laws in order to remove his rights as a patient.  Friend's allegations concerning Defendants' supervisory responsibilities are overwhelmingly vague.  There are no allegations regarding how Defendants failed to train or supervise their subordinates, how these actions harmed him, or what variances to the law Defendants sought.  Friend's allegations are little different than conclusory assertions claiming that Defendants should be held liable because they were in positions of supervisory authority over others who acted wrongfully—the very type of claim specifically precluded under § 1983.  *See Harris*, 489 U.S. at 385.

Defendants also argue that even assuming that Friend adequately alleged Defendants' involvement in the conduct at issue, he still has failed to allege viable claims for relief.  The Court agrees.

Friend asserts that "Defendants informed the social security office that this seventy-seven year old [sic] is housed in a detention center on prison grounds.  Therefore, Plaintiff is recognized as a state detainee by the social security office, whose representative therefore says Plaintiff does not qualify for social security and, as such, cannot receive Medicare coverage. . . ."  (ECF No. 1 at 5-6.)  Even assuming that

eligibility for Social Security benefits is a prerequisite to Medicare health insurance benefits, as alleged, Friend is ineligible regardless of Defendants' actions. Specifically, Social Security benefits cannot be paid to a person who:

> [I]mmediately upon completion of [a jail or prison term] pursuant to conviction of a criminal offense an element of which is sexual activity, is confined by court order in an institution at public expense pursuant to a finding that the individual is a sexually dangerous person or a sexual predator or a similar finding.

42 U.S.C. § 402(x)(1)(A)(iii). Friend admits that he is committed to the MSOP (ECF No. 1 at 5) and the public record also demonstrates that he was convicted of criminal sexual conduct before being indefinitely committed to the MSOP. *See Friend v. Piper*, No. 17-cv-4356 (SRN/HB), 2018 WL 4011568, at *1 (D. Minn. Aug. 22, 2018) ("After Friend served a 12-year prison sentence for convictions of criminal sexual conduct involving multiple girls between the ages of five and thirteen, on April 9, 1996, the St. Louis County District Court indefinitely committed him to the Minnesota Sex Offender Program ('MSOP') as a sexual psychopathic personality ('SPP') and sexually dangerous person ('SDP')".) Given that Friend's ineligibility for Social Security benefits has nothing to do with Defendants' conduct, no constitutional claims can arise from the conduct as alleged in the Amended Complaint.

Friend also appears to be alleging a Fourteenth Amendment substantive and procedural due process claim based on the alleged confiscation of medications by Defendants "knowing that this poses a substantial risk of serious harm that could cause death." (ECF No. 1 at 6.) "Where a civilly-committed patient's Fourteenth Amendment claim is for constitutionally deficient medical care, we apply the deliberate indifference

standard from the Eighth Amendment." *Mead v. Palmer*, 794 F.3d 932, 936 (8th Cir.

2015). To survive a Rule 12(b)(6) motion to dismiss a deliberate indifference claim,

Friend must allege facts that show: "(1) he suffered from objectively serious medical

needs, and (2) the defendants actually knew of, but deliberately disregarded those needs."

*Id.* (citation omitted). A "pleading that offers labels and conclusions or a formulaic

recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678

(cleaned up). Friend's allegations concerning Defendants do not state with any degree of

specificity how they each respectively knowingly disregarded a known medical need as

required, rather the allegations merely parrot the elements of a deliberate indifference

claim.

For all of the reasons stated above, the Court finds that Friend has not pleaded a

viable individual-capacity claim against Defendants.[1]

## C.    Claims Against Defendants in their Official Capacity

"A suit against a government official in his or her official capacity is 'another way

of pleading an action against an entity of which an officer is an agent.'" *Baker v.

Chisom*, 501 F.3d 920, 925 (8th Cir. 2007) (quoting *Monell v. Dep't of Social Servs.*, 436

U.S. 658, 690 n.55 (1978)). "Section 1983 provides a federal forum to remedy many

---

[1]      To the extent Friend is making an Equal Protection claim, such a claim is also
without merit because he has not alleged that he is similarly situated to the others who
were treated more favorably. *See Bogren v. Minnesota*, 236 F.3d 399, 408 (8th Cir.
2000) ("In general, the Equal Protection Clause requires that state actors treat similarly
situated people alike."); *see also Hoyt v. City of St. Anthony Vill.*, No. 18-cv-2434
(PJS/ECW), 2019 WL 2212147, at *6 (D. Minn. May 22, 2019) ("To state a plausible
claim under the Equal Protection Clause, a plaintiff must identify a similarly situated
comparator who was treated more favorably.") (citing *In re Kemp*, 894 F.3d 900, 909-10
(8th Cir. 2018), *cert. denied*, 139 S. Ct. 1176 (2019)).

deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.  The Eleventh Amendment bars such suits unless the State has waived its immunity." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).  Defendants are all employees of MSOP and DHS, a department of the State of Minnesota.  *See Daniels v. Jesson*, No. 13-cv-736 (JNE/SER), 2014 WL 3629874, at *5 (D. Minn. July 22, 2014) (citation omitted) ("MSOP operates under the auspices of the Minnesota Department of Human Services, which is itself a subdivision of the State of Minnesota.").  "[T]he Eleventh Amendment bars actions, in Federal Court, which seek monetary damages from individual State Officers, in their official capacities, as well as State Agencies, because such lawsuits are essentially for the recovery of money from the state." *King v. Dingle*, 702 F. Supp. 2d 1049, 1069 (D. Minn. 2010) (citation and marks omitted).  As such, "[t]he Eleventh Amendment protects the State, and the arms of the State, from liability for monetary damages in a Section 1983 action." *Id.*  Accordingly, to the extent Friend seeks monetary damages from Defendants in their official capacities, his claims are barred by the Eleventh Amendment.

That said, Friend also seeks declaratory and injunctive relief.  "Under the *Ex Parte Young* doctrine, a private party can sue a state officer in his official capacity to enjoin a prospective action that would violate federal law." *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011).  "In determining whether this exception applies, a court conducts 'a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id*.

13

(quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002)). Under *Ex Parte Young*, a state official "cannot be sued merely as a representative of the state itself," instead, the official "must have 'some connection with the enforcement of the act.'" *Id.*; *see also Church v. Missouri*, 913 F.3d 736, 747-48 (8th Cir. 2019) (same) (quoting *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017), citing *Young*, 209 U.S. at 157); *Nix v. Norman*, 879 F.2d 429, 433 (8th Cir. 1989) (citations omitted) ("To establish liability in an official-capacity suit under section 1983, a plaintiff must show either that the official named in the suit took an action pursuant to an unconstitutional governmental policy or custom, or that he or she possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner.").[2]

As set forth above with respect to the individual-capacity claims against Defendants, Friend has not has adequately pleaded how each respective Defendant enacted or enforced an unconstitutional law, policy, or custom or how Defendants effected their supervisory authority in an unconstitutional manner. *See Young Am.'s Found. v. Kaler*, 370 F. Supp. 3d 967, 980 (D. Minn. 2019) ("[W]hether suing a state defendant in their official or individual capacity, a plaintiff must plausibly allege that that official had **some kind of personal involvement** with the purportedly unconstitutional

---

[2]    "A governmental policy involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy." *Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007) (citation and marks omitted). "A governmental custom involves a pattern of persistent and widespread practices which become so permanent and well settled as to have the effect and force of law." *Id.* (citation and marks omitted).

policy or action.") (emphasis added); *see also Issaenko v. Univ. of Minnesota*, 57 F. Supp. 3d 985, 1019 (D. Minn. 2014) ("With respect to the claims for injunctive relief against the Individual Defendants and Bazzaro in their official capacities, these claims are deficient because they fail to plead that any constitutional violations perpetrated by the Individual Defendants and/or Bazzaro that were the result of an unconstitutional policy or custom of the University.") (citations omitted).  At most, as argued by Defendants, Friend has alleged "Plaintiff is only one of many MSOP clients that have been denied needed treatment, many of whom have died needlessly.  There is a definite pattern showing the effects of Defendants' lack of concern for and indifference to MSOP clients' medical needs."  Friend provides no facts or incidents (*e.g.*, identification of the other MSOP clients) that comprise the alleged "pattern" of Defendants' lack of concern to MSOP clients' medical needs.  Conclusory statements and boilerplate language referencing the existence of such a custom, practice, or policy does not sufficiently allege a pattern of unconstitutional misconduct.  *See Lollie v. Johnson*, No. 14-cv-4784 (SRN/HB), 2015 WL 3407931, at *5 (D. Minn. May 27, 2015) (citing *McGautha v. Jackson Cnty., Mo., Collections Dept.*, 36 F.3d 53, 57 (8th Cir. 1994)).

Friend therefore has not pleaded viable official-capacity claims against Defendants.

## III.   MOTION FOR A TEMPORARY RESTRAINING ORDER

Friend asks for a temporary restraining order requiring Defendants to immediately provide necessary and previously scheduled medical care for his Chronic Obstructive

Pulmonary Disease ("COPD"). (ECF No. 3.) In particular, Friend seeks an order from the Court requiring Defendants to:

> [P]rovide Plaintiff with necessary medical care including, but not limited to, previously scheduled lung examination, that was put on hold, to determine if inadequate oxygen is entering the blood stream going to the heart and, hardening of arteries blocking flow of blood to the heart; (2) enjoin Defendants from denying medical care because Plaintiff has no medical insurance due to Defendants' maliciously intended actions causing Plaintiff to be disqualified to receive Medicare Insurance; (3) order Defendants to return Plaintiffs S.A.M.'s medications to him.

(ECF No. 1 at 10.)

According to Friend, he has been denied medical care and "Defendants have created the current problem by leading the Social Security Administration office to believe that Plaintiff is a prisoner in a detention center and as such does not qualify to receive retirement benefits nor automatically be enrolled in the Medicare program that would pay for his current medical care." (*Id.* at 14-16.) Friend also asserts that nursing staff took away his heart and lung medications as punishment for his refusal to purchase MNsure insurance. (*Id.* at 14.)

## A.    Factual Background

Friend was diagnosed in 2014 with COPD. (ECF No. 17 ¶ 3.) Friend was also diagnosed in 2015 with emphysema (a more specific condition that falls under the umbrella term COPD), which is a condition in which the air sacs of the lungs are damaged, causing shortness of breath. (*Id.* ¶ 4.) Friend had a computerized tomography ("CT") scan of his chest at the time of his emphysema diagnosis. (*Id.*) In 2017, Friend was provided with a follow-up CT scan. (*Id.* ¶ 5.) The scan indicated that Friend's condition was stable and had not worsened since he was initially diagnosed with

emphysema in 2015. (*Id.*; ECF No. 15 ¶ 3.)  Friend suffers from shortness of breath during exertion as a result of his COPD and emphysema.  (ECF No. 17 ¶ 5.)

On October 13, 2017, during a routine medical appointment, Keri Ovsak, a licensed nurse practitioner at MSOP, referred Friend for pulmonary function testing ("PFT").  (ECF No. 15 ¶¶ 1-2.)  PFT measures lung capacity and is commonly used to set a baseline for persons suffering from COPD and emphysema.  (*Id.* ¶ 2.)  While Ovsak referred Friend for PFT, she determined that the testing was an elective therapy and not urgent or essential given that his COPD and emphysema had been stable (based on his symptoms and 2017 CT scan) since he was initially diagnosed with emphysema in 2015. (*Id.* ¶ 3.)  Friend was not referred for this test because his symptoms had worsened, but was referred merely because he had not previously undergone PFT.  (ECF No. 17 ¶ 6.)

The MSOP pays on behalf of patients for health insurance for necessary medical services.  (ECF No. 19 at 9.)  Pursuant to MSOP policy, elective therapy is therapy that is advantageous to client health but not urgent or essential.  (ECF No. 17 ¶ 7.)  Clients, such as Friend, may only receive elective therapy or other non-essential care if the client, through insurance or otherwise, is able to pay the costs involved.  (*Id.*)  MSOP policy specifies that PFT is elective therapy.  (ECF No. 19 at 1.)  Friend was notified in writing on October 17, 2017, that the PFT would not be done unless he obtained insurance coverage for the exam.  (ECF No. 17 ¶ 8; ECF No. 20.)  Friend returned the form with the following notation: "Minnesota statute requires DHS to provide all medical needs. Centurion Health is paid $68,000,0000.00 annually to guarantee my medical needs are

cared for." (*Id.*) Friend has not applied for medical insurance outside of Medicare. (ECF No. 17 ¶ 8.)

Despite not undergoing PFT, Friend has undergone regular medical exams to assess his COPD and emphysema, as well as his overall physical health, with his most recent medical exam prior to the Defendants' briefing being on December 5, 2018. (ECF No. 17 ¶ 9.) His COPD and emphysema remained stable and it has been determined that he did not require any medical interventions for those conditions. (*Id.*) Friend's only symptom remains shortness of breath during physical exertion. (*Id.*)

In addition, due to a change in an unidentified MSOP policy, because Friend is uninsured he cannot self-administer medication, but has continued access to his medications by going to a nursing window. (ECF No. 17 ¶¶ 11.) While his medications are available to him through the nursing window, Friend refuses to obtain his medications in this manner. (*Id.*)

Friend provides no evidence in support of his Motion for TRO except for a February 22, 2018 MSOP medical request form where he complains of chest pain after gall bladder surgery, and noted that he "work [sic] hard in the gym without any labored breathing . . . ." (ECF No. 35.)

**B.    Legal Standard**

To determine if a plaintiff is entitled to a TRO, a court considers: (1) the likelihood of success on the merits of the plaintiff's claims; (2) the threat of irreparable harm to the plaintiff; (3) the balance between that threat of harm and the injury that granting injunctive relief would inflict on other interested parties; and (4) whether the

issuance of a TRO is in the public interest. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640

F.2d 109, 114 (8th Cir. 1981). No single factor is determinative, and all factors must be

viewed in totality when a court decides if relief should be granted. *Id.* at 113. That said,

"[s]uccess on the merits has been referred to as the most important of the four factors."

*Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (citation

omitted); *see also Mid-Am. Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 972 (8th

Cir. 2005) ("[A]n injunction cannot issue if there is no chance of success on the merits.")

(citations omitted). In addition, "[t]he failure to demonstrate irreparable harm is an

independently sufficient ground to deny injunctive relief." *Jackson v. Macalester Coll.*,

169 F. Supp. 3d. 918, 921 (D. Minn. 2016) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841,

844 (8th Cir. 2003)). Granting emergency injunctive relief is "an extraordinary remedy

and the burden of establishing the propriety of an injunction is on the movant."

*Roudachevski*, 648 F.3d at 705.

## C.   Analysis

"In order to demonstrate irreparable harm, a party must show that the harm is

certain and great and of such imminence that there is a clear and present need for

equitable relief." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013).

"Speculative injury is insufficient to justify a preliminary injunction, and a moving

party's long delay after learning of the threatened harm may indicate that the harm is

neither great nor imminent. *Minnesota Vikings Football Stadium, LLC v. Wells Fargo*

*Bank*, 157 F. Supp. 3d 834, 840 (D. Minn. 2016) *(citing Novus Franchising*, 725 F.3d at

894-95; *Hubbard Feeds, Inc. v. Animal Feed Supplement*, *Inc.*, 182 F.3d 598, 603 (8th

Cir. 1999)).  Friend learned of the MSOP's decision to characterize his PFT treatment as elective over a year before bringing the present Motion for TRO.  Friend's delay in seeking relief coupled with the fact that Friend has not set forth evidence of why the test is essential in light of his multiple recent CT scans and medical examination showing no deterioration of his condition, leads this Court to find no certain irreparable harm necessitating immediate relief.  Similarly, Friend has not set forth any evidence that he is ineligible or unable to obtain medical insurance coverage for elective procedures through some means other than Medicare as set forth in the MSOP policies (ECF No. 19 at 9)— such as medical assistance.  Finally, to the extent that Friend needs the medications he complains were confiscated, the present evidence before the Court is that all he needs to do to obtain his medications is go to the nurses' window, and the Court does not have any evidence before it that such a requirement will lead to any harm or burden on the part of Friend.  Because Friend cannot demonstrate the requisite irreparable harm, his motion for a TRO should be denied on this basis alone.

Friend's Motion for a TRO should also be denied because Friend is not likely to prevail on the merits of his claims.  As set forth in Section III of this Report Recommendation, dealing with Defendants' Motion to Dismiss, Friend's claim that he is being denied insurance is premised on the assertion that because he was denied Social Security benefits based on Defendants' characterization of his confinement to the Social Security Administration, he was incorrectly deemed ineligible for Medicare benefits.  However, even if Friend's Medicare insurance is dependent on his eligibility for Social

Security benefits,[3] federal law renders him ineligible for such Social Security benefits because he is committed at MSOP after serving time for a crime involving sexual activity regardless of the characterization of his confinement by Defendants.  *See* 42 U.S.C. § 402(x)(1)(A)(iii).

With respect to his claims that being withheld PFT and medications constitutes constitutionally deficient medical care, Friend must that show: "(1) he suffered from objectively serious medical needs, and (2) the defendants actually knew of, but deliberately disregarded those needs."  *Mead*, 794 F.3d at 936.  The level of culpability required to demonstrate deliberate indifference on the part of officials is equal to criminal recklessness.  *See Jenkins v. Cnty. of Hennepin*, 557 F.3d 628, 632 (8th Cir. 2009).  Friend "must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment."  *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010).  "A prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation."  *Meuir v. Greene Cnty. Jail Employees*, 487 F.3d 1115, 1118-19 (8th Cir. 2007) (cleaned up).  While the PFT was prescribed to Friend, the Court cannot, based on the present record, determine that Friend was administered inadequate treatment for his COPD and emphysema merely because the PFT was deemed elective, requiring him to pay for the testing.  The Court cannot find deliberate disregard because Defendants presented evidence that the MSOP is treating and monitoring Friend's lungs through his medical examinations and CT scans and

---

[3]    Plaintiff provided no evidence to the Court of the denial of Medicare coverage.

Friend has provided no evidence to the Court that the CFT is necessary to treating his conditions in light of the other treatment provided to him at MSOP.[4]

In addition, the Court cannot comprehend, without more evidence, how requiring a person to go to a nursing window to get their medications constitutes deliberate disregard of a person's medical needs. Friend does not dispute that he can obtain his medications in this manner or that he is unable to do so, he just refuses to do so because he is concerned about being exposed to other patients' germs. (ECF No. 34 at 6-7.) Indeed, to the extent that Friend is being deprived of his medication, it appears based on the evidence that it is most likely due to Friend's own conduct.

For all the reasons stated above, and based on the available record, the Court recommends that no TRO should issue.

## IV.  **RECOMMENDATION**

Based on the above, and on the files, records, and proceedings herein, **IT IS RECOMMENDED** that:

1.    Plaintiff's Motion for a Temporary Restraining Order (ECF No. 3) be **DENIED**;

2.    Defendants' Motion to Dismiss (ECF No. 25) be **GRANTED** and that Plaintiff's Amended Complaint be **DISMISSED WITHOUT PREJUDICE**; and

---

[4]    Friend also claims he has hardening of the arteries that presents a risk to his health and results in pain when walking a distance of about 400 yards. (ECF No. 34 at 4-5.) He presented no evidence that any such condition constitutes a serious medical need, and in any event, PFT does not diagnose hardening of the arteries. (ECF No. 15 ¶ 2.) Based on the record, other than the elective PFT, Friend has not been referred for any medical care that he has not received. (ECF No. 17 ¶ 10.)

3.      Plaintiff's Motion to Amend Complaint for Violation of Civil Rights Under

42 U.S.C. 1983 (ECF No. 42) be **GRANTED**.


DATED: July 29, 2019                            _s/ Elizabeth Cowan Wright_
                                                ELIZABETH COWAN WRIGHT
                                                United States Magistrate Judge



## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).